## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

KATHY BROWNE,           )
                           )
           Plaintiff,     )
                           )
v.                       )     Civil Action No. 3:22-cv-648–HEH
                           )
JENNIFER WALDO, *et al.*,   )
                           )
           Defendants.   )

### MEMORANDUM OPINION
### (Resolving Motions and Closing the Case)

This case involves a prolonged relational conflict, which has morphed into a multi-year legal battle. The matter is now before the Court[1] on Defendant Rafer Weigel ("Weigel") and Defendant Jennifer Waldo's ("Waldo," collectively, "Defendants") separate Motions to Dismiss (ECF Nos. 18, 30, respectively), filed on December 20, 2022, and January 11, 2023. Defendants seek to dismiss *pro se* Plaintiff Kathy Browne's ("Plaintiff") Second Amended Complaint.[2] Also before the Court is Waldo's Motion to

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. § 1332. The parties are citizens of different states and the amount in controversy is over $75,000. (Second Am. Compl. at 2.) Venue is proper because the acts and omissions giving rise to this action occurred in Richmond, Virginia.

[2] Plaintiff filed her 6-page original Complaint (ECF No. 1) on September 30, 2022, against Waldo only. Plaintiff then filed a 206-page Amended Complaint (ECF No. 2), including exhibits, on October 4, 2022. Then, on October 7, 2022, Plaintiff filed an 18-page Second Amended Complaint (ECF No. 3) without Waldo's consent and without seeking leave of Court. The Court then directed Plaintiff to file a motion for leave to file a Second Amended Complaint, pursuant to Federal Rule of Civil Procedure 15. (Order, ECF No. 4.) Plaintiff then filed her motion for leave to file the Second Amended Complaint (ECF No. 5), which the Court granted (ECF No. 6). While the operative complaint is titled "Second Amended Complaint," the Court notes that it is actually Plaintiff's fourth filed pleading. It consists of 256 pages, including 17 exhibits, and includes Weigel as a Defendant for the first time.

Quash and Dismiss (the "Motion to Quash," ECF No. 20), filed on December 21, 2022;

Plaintiff's Motions[3] Seeking Leave of Court to File Surreply (ECF Nos. 28, 36), filed on

January 6, 2023, and February 6, 2023, respectively; and Plaintiff's "Motion to Strike

Waldo's Opposition to Plaintiff's Motion Seeking Leave of Court to File Surreply" (ECF

No. 38), filed on April 6, 2023.

The parties have filed memoranda on all pending motions supporting their

respective positions. The Court will dispense with oral argument because the facts and

legal contentions have been adequately presented to the Court, and oral argument would

not aid in the decisional process. *See* E.D. Va. Loc. R. 7(J). For the reasons discussed

below, the Court will deny Waldo's Motion to Quash and Dismiss, deny Plaintiff's

Motions Seeking Leave of Court to File Surreply, deny Plaintiff's Motion to Strike, and

grant Defendants' Motions to Dismiss for failure to state a claim. Because Plaintiff has

already amended her Complaint numerous times,[4] the Court will dismiss her Second

Amended Complaint with prejudice.

---

[3] Plaintiff has filed two surreplies without first seeking leave of Court. (ECF Nos. 28, 36.) Plaintiff never sought leave of Court for her first surreply. (ECF No. 28.) Plaintiff later filed a second surreply without leave of Court (ECF No. 34), and the Court directed the Clerk of Court to mark the surreply as "Received Only," and directed Plaintiff to file a Motion Seeking Leave to File Surreply. (Order, ECF No. 35.) Plaintiff then filed her Motion Seeking Leave of Court to File Surreply. (ECF No. 36.) Because Plaintiff never filed a Motion Seeking Leave to File Surreply as to her first surreply (ECF No. 28), the Court will construe the filing as a Motion Seeking Leave to File Surreply and address it accordingly.

[4] *See supra* note 1. Moreover, since filing her Second Amended Complaint, Plaintiff has filed two surreplies (*see supra* note 2) and responded to Defendants' dispositive motions by filing briefs and memoranda that set forth various additional factual allegations not present in the Second Amended Complaint. (*See* ECF Nos. 22, 26, 28.)

## I. BACKGROUND

Like her prior complaints, Plaintiff's Second Amended Complaint is difficult to follow. It vaguely references other legal proceedings involving Plaintiff and Defendants in Virginia and Indiana state courts. From what the Court can decipher, Plaintiff alleges that she met Waldo through Facebook in 2017. (Second Am. Compl. at 8[5].) Waldo claimed to be a fan of Plaintiff's book and invited Plaintiff to her home in Valparaiso, Indiana, and to social engagements. (*Id.*) After Plaintiff learned through Facebook that Waldo claimed to be "best friends" with Plaintiff, Plaintiff "blocked" Waldo on social media. (*Id.*)

On August 6, 2019, Plaintiff received a text message from Waldo stating that she was upset with Plaintiff for "blocking" her. (*Id.*) Waldo also explained that her neighbor was sexually abusing her with ghost peppers because Browne did not "hook up" with the neighbor.[6] (*Id.*) Waldo further stated that Plaintiff's ex-fiancé, Weigel, "needed to suffer" because he also "blocked" Waldo on social media. (*Id.*) On August 8, 2019, Weigel allegedly contacted Plaintiff and told her that Waldo was an "obsessed fan" who was stalking both him and Browne. (*Id.*)

Plaintiff later messaged the neighbor on Instagram and asked him whether he was sexually abusing Waldo with ghost peppers. (*Id.* at 9.) The neighbor denied the

---

[5] The Second Amended Complaint is inconsistently arranged in numbered paragraph form. Therefore, the Court will refer to the document's page numbers and not its paragraphs.

[6] It is unclear whether Plaintiff refers to Plaintiff's neighbor or Waldo's neighbor. The Second Amended Complaint states, "her neighbor" in a convoluted sentence. (Second Am. Compl. at 8.) Regardless, this is not dispositive, nor does it impact the Court's analysis.

allegations and notified Plaintiff that Waldo was also stalking him. (*Id.*) Plaintiff alleges

that Waldo lied about the sexual abuse so Waldo could "ingratiate herself and insert

herself into Browne's life." (*Id.* at 7.) On August 11, 2019, Plaintiff called the police to

report Waldo for harassment. (*Id.* at 9.)

At that time, Plaintiff was in a romantic relationship with a man named David

Mueller ("Mueller"). (*Id.* at 8.) On August 23, 2019, Mueller told Plaintiff that Waldo

wanted to send him an "intimate photo" of Plaintiff. (*Id.* at 9.) Waldo also allegedly

informed Mueller about the neighbor who was purportedly sexually abusing her with

ghost peppers because "she failed to set [Plaintiff] up with him." (*Id.*)

Plaintiff appears to allege that on August 24, 2019, Waldo and Plaintiff spoke over

the phone, and Waldo asked Plaintiff to send Waldo nude photos of Waldo that Plaintiff

had in her possession. (*See id.* at 4; Ex. 3 to Second Am. Compl. at 4, ECF No. 7-3.)

Plaintiff maintains that Waldo tricked her into sending the images and that it was this

exchange of photos upon which Waldo had Plaintiff prosecuted for violating Indiana's

revenge porn law. (Second Am. Compl. at 4.) After Plaintiff sent Waldo the intimate

image of Waldo, Waldo allegedly responded by stating, "Congrats, Kathy, that's a

felony." (Pl.'s Opp'n Br. at 2–3, ECF No. 22-6.)

On September 20, 2019, Waldo accused Plaintiff of stalking her and sought to

obtain a protective order against Plaintiff in Indiana. (Second Am. Compl. at 7.) In the

protective order request, Waldo demanded that Plaintiff pay her $10,000. (*Id.*) Plaintiff

asserts that Waldo sought the protective order and initiated criminal charges against her

to retaliate against Plaintiff for contacting Waldo's neighbor and making police reports

about her. (*Id.*) Plaintiff alleges that on October 1, 2019, "Waldo made another false statement to the police accusing [Plaintiff] of posting her photos to an online dating site." (*Id.* at 9.) Plaintiff contends that, in October 2019, Waldo testified that she did not speak to Plaintiff on the phone on August 24, 2019, but that she later testified during cross-examination that she did in fact speak to Plaintiff on the phone that day. (*Id.* at 7.) Plaintiff alleges that Waldo corrected this statement only after Weigel's attorney told Waldo that she had committed perjury. (*Id.* at 7.)

Plaintiff then filed a civil complaint against Waldo in Indiana.[7] (*Id.*) Plaintiff alleges that on May 14, 2020, after Plaintiff filed the complaint in Indiana, Waldo then traveled to Richmond and "retaliated against [Plaintiff]" by obtaining a protective order and filing a false police report in Richmond, Virginia.[8] (*Id.* at 4.) Plaintiff alleges that she was arrested in Richmond on August 18, 2020, based on Waldo's misrepresentations to police officers that Plaintiff had distributed Waldo's intimate image and threatened Waldo over the phone on August 24, 2019. (*Id.* at 6.) Waldo's statements to police were false because Waldo previously testified that Waldo and Plaintiff did not speak on the phone on August 24, 2019. (*Id.* at 4.)

Plaintiff seemingly alleges that on October 5, 2020, the charges initiated against her by Waldo in the Richmond City General District Court were dismissed, and Waldo's request for a protective order was denied. (*Id.* at 6.) Plaintiff asserts that, on that same

---

[7] The nature of these charges and the status of these proceedings are unknown.

[8] As with the Indiana court proceedings, the status of these proceedings are also unknown.

day, she was granted a protective order against Waldo for cyberstalking and that Waldo

was prosecuted in Richmond for dissemination of Plaintiff's nude image. (*Id.* at 6, 7.)

Finally, Plaintiff vaguely claims that on December 8, 2021, she learned that Defendants

conspired to "hack into her online accounts." (*Id.* at 7.) Plaintiff contends that she was

injured by Defendants' conduct because the fact that she was accused of a sex crime in

two separate states caused her to be denied residency at Coral Ridge Towers in Florida

and unable to work as a flight attendant while she faced pending criminal charges against

her. (*Id.* at 6, 7.)

Based on these facts, Plaintiff appears to allege counts against Defendants for: (1)

abuse of process, (2) false arrest, (3) fraud, misrepresentation, and extortion, (4) slander

and libel, (5) violating the Virginia Computer Crimes Act, Va. Code § 18.2-152.12, (6)

civil conspiracy, and (7) civil perjury. Defendants move to dismiss the Second Amended

Complaint for failure to state a claim upon which relief can be granted, pursuant to

Federal Rule of Civil Procedure 12(b)(6). Defendants also argue that Plaintiff's claims

are time-barred.

## II. ANALYSIS

As a preliminary matter, the Court will first address Waldo's Motion to Quash and

Dismiss, Plaintiff's Motion Seeking Leave of Court to File Surreply, and Plaintiff's

Motion to Strike. The Court will then turn to the dispositive Motions to Dismiss.

### A. Waldo's Motion to Quash

The Court will deny Waldo's Motion to Quash. Waldo argues that service was not

perfected because Plaintiff served Waldo's husband but not Waldo herself. (Mot. to

Quash at 1.)  She maintains that even though Plaintiff "sought the assistance of
[Indiana's] Porter County Sheriff's Department . . . to serve [Waldo] with initial process"
and a deputy left the documents with Waldo's husband at their home, service was
insufficient because Waldo had not lived at that residence for two months because, at the
time, the Waldos were in the process of divorcing.  (*Id.*)  Furthermore, Waldo asserts that
she had a protective order against her husband at the time Plaintiff served him, so service
on Waldo through her husband is not valid service.  (*Id.* at 2.)  Plaintiff points out, and
Waldo concedes, that the no-contact order between the Waldos still allowed the two to
have contact to exchange children between the two of them.  (Waldo's Reply at 1–2, ECF
No. 24.)  Moreover, Plaintiff provides evidence that demonstrates that Waldo advertised
on Facebook that she hosted social events at the Waldos' shared residence during this
timeframe.  (Ex. 2 to Pl.'s Opp'n Br. at 2, ECF No. 23-2.)

The Court concludes that service was sufficient.  Waldo only recently moved out
of the residence she shared with her husband, still spent time at the residence, and was in
contact with her husband during the time period in which service was effectuated.
Plaintiff sought the assistance of a local deputy to serve Waldo, and it was reasonable for
Plaintiff to believe Waldo resided at the home that Waldo and her husband jointly owned.

More importantly, Waldo has since filed a Motion to Dismiss for Failure to State a
Claim and an opposition to Plaintiff's Motion for Leave of Court to File Surreply.  Waldo
has therefore waived her personal jurisdiction defense because she has "indicate[d] an
intent to litigate the case on the merits." *In re Asbestos Products Liab. Lit.*, 921 F.3d 98,
107 (3d Cir. 2019) ("Behavior that is consistent with waiver, and which indicates an

intent to litigate the case on the merits, is sufficient to constitute waiver, regardless of whether the parties also express an intent to preserve the defense."). Therefore, Waldo's Motion to Quash will be denied.

## B. Plaintiff's Motions to File Surreplies

The Court will deny Plaintiff's Motions Seeking Leave to File Surreplys. Plaintiff filed two surreplies without initially seeking leave of Court. (ECF Nos. 28, 34.) The first is Plaintiff's surreply to Weigel's Motion to Dismiss (ECF No. 28) and the second is her surreply to Waldo's Motion to Dismiss (ECF No. 34). After Plaintiff filed her second surreply without leave of Court, the Court directed Plaintiff to file a motion seeking leave to file her surreply. Plaintiff then filed ECF No. 36, which seeks leave of Court to file her surreply to Waldo's Motion to Dismiss. As stated above, Plaintiff has not sought leave of Court to file her first surreply, however, the Court will construe the filing as a Motion Seeking Leave to File Surreply. (*Supra* note 2.)

Local Rule 7(F) prohibits a surreply absent leave of Court. Whether to grant a party leave to file a surreply is within the Court's discretion. *See Adams v. Applied Bus. Servs.*, No. 2:18cv559, 2019 WL 7817080, at *1 (E.D. Va. Aug. 30, 2019). "In deciding whether to exercise that discretion, the [C]ourt should consider whether prejudice will result from the [C]ourt considering a new argument without the opposing party's having an opportunity to respond." *Id.* A surreply may be appropriate to cure prejudice where the moving party "brings forth new material or deploys new arguments in a reply brief." *Id.* The "entire purpose of a reply" is for the moving party "to reply to counterpoints made by [its opponent] in the opposition." *Id.* at *2. An opposing party "may not submit

8

a surreply simply because [the moving party] used their reply brief to further support an argument made in their opening brief or to respond to new arguments in [the opposing party's] opposition." *Id.* A surreply is properly denied where its purpose is "to correct what [the plaintiff] perceive[d] to be Defendant's misrepresentations" of the law and the record because that does not address a new argument. *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003), *aff'd* 85 F. App'x 960 (4th Cir. 2004). It is well-established that surreplies are "highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on the matter." *Lismont v. Alexander Binzel Corp.*, No. 2:12cv591, 2014 WL 12527239, at *3 (E.D. Va. May 23, 2014) (internal quotations omitted).

It is clear that Plaintiff did not follow Local Rule 7(F). She did not seek leave to file her first surreply, and although it is styled as "Plaintiff's Reply to Rafer Weigel's Memorandum in Opposition . . . ," the body of that filing appears to be the surreply itself. (ECF No. 28.) However, Plaintiff is *pro se*, and a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (2007); *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). Thus, the Court shall construe Plaintiff's first surreply as a motion for leave to file a surreply and consider it accordingly.

As to Plaintiff's second surreply, as stated above, Plaintiff sought leave of Court to file the surreply *after* the Court directed her to do so. Despite the disorganized nature of Plaintiff's repeated filings, the Court will nonetheless consider this motion, as well.

Even construing Plaintiff's surreplies liberally, Plaintiff's filings are not responsive to any new arguments raised in Defendants' replies. She merely attempts to

"have the last word on the matter," *Lismont*, 2014 WL 12527239, at *3, and uses the brief

"to further support an argument made in [her] opening brief." *Adams*, 2019 WL

7817080, at *1. For these reasons, the Court will deny Plaintiff's construed Motion

Seeking Leave of Court to File Surreply (ECF No. 28)[9] and deny her Motion Seeking

Leave of Court to File Surreply (ECF No. 36).

### C. Plaintiff's Motion to Strike

The Court will deny Plaintiff's Motion to Strike. After Plaintiff filed her Motion

Seeking Leave of Court to File Surreply (ECF No. 36), Waldo filed an opposition brief in

response (ECF No. 37). Plaintiff moves to strike Waldo's opposition "for failure to

comply with [L]ocal Civil Rule 7(K) Pleadings-Motions-Orders." (Mot. to Strike at 1,

ECF No. 38.) Local Rule 7(K) states:

> Motions Against *Pro Se* Parties: It shall be the obligation of counsel for any
> party who files any dispositive or partially dispositive *motion* addressed to
> a party who is appearing in the action without counsel to attach to or
> include at the foot of the motion a warning consistent with the requirements
> of *Roseboro v. Garriso*n, 528 F.2d 309 (4th Cir. 1975).

E.D. Va. Loc. R. 7(K) (emphasis added).

The Court will deny Plaintiff's Motion to Strike for two reasons. First, Waldo did

not file a *motion. See id.* Waldo filed an *opposition* to *Plaintiff's* motion. Rule 7(K)

does not require counsel opposing a party who appears without counsel to attach the

*Roseboro* requirements for *responsive pleadings.* Second, the Court did not consider

---

[9] In the accompanying Order, the Court will direct the Clerk to convert Plaintiff's surreply (ECF No. 28) into a Motion for Leave to File Surreply.

Waldo's opposition brief in determining that Plaintiff's Motion for Leave to File Surreply must be denied.  For these reasons, Plaintiff's Motion to Strike will be denied.

### C. Defendants' Motions to Dismiss

The Court will grant Defendants' Motions to Dismiss.  The purpose of a motion to dismiss is "to test the legal sufficiency of the complaint." *Randall v. United States*, 30 F.3d 518, 523 (4th Cir. 1994).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is "plausible" when the plaintiff pleads facts sufficient to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Twombly*, 550 U.S. at 556.  Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  The Court need not accept legal conclusions that are presented as factual allegations, *id.* at 555, or "unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).  "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

A *pro se* complaint is entitled to liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  However, the requirement of liberal construction does not mean that the Court may ignore a plaintiff's failure to allege facts that set forth cognizable claims in

11

a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990);

*see also Iqbal*, 556 U.S. at 662.  The Court may not rewrite a complaint to include claims

that were never presented, *see Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999),

construct the plaintiff's legal arguments for them, *see Small v. Endicott*, 998 F.2d 411,

417–18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the Court,

*Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).  A liberal construction

of a plaintiff's pleadings merely means that if the Court can reasonably read the pleadings

to state a valid claim on which the plaintiff could prevail, it should do so.  *See Erickson*,

551 U.S. at 94.  Where a complaint fails to "give the defendant fair notice of what the . . .

claim is and the grounds upon which it rests," it should be dismissed.  *Twombly*, 550 U.S.

at 550.

As previously stated, Plaintiff alleges the following counts against Defendants: (1)

abuse of process, (2) false arrest, (3) fraud, misrepresentation, and extortion, (4) slander

and libel, (5) violating the Virginia Computer Crimes Act, Va. Code § 18.2-152.12, (6)

civil conspiracy, and (7) civil perjury.  All of Plaintiff's allegations fail to state a claim

upon which relief can be granted.[10]  The Court will address each count in turn.

---

[10] The Court agrees with Defendants that Plaintiff's claims are also likely time-barred. (*See* Waldo's Mot. at 13–18; Weigel's Mot. at 10–16.) "A defendant may properly raise—and the Court may properly consider—a statute of limitations defense at the motion to dismiss stage 'if the time bar is apparent on the face of the complaint.'" *Plumbers and Steamfitters Union Loc. No. 10 v. Waters*, 451 F. Supp. 3d 543, 553 (E.D. Va. 2020) (quoting *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005)).  In deciding a motion to dismiss based on the statute of limitations, the Court should only grant the motion "if it clearly appears on the face of the [C]omplaint" that Plaintiff's claims are time-barred. *Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993).  Defendants' statute-of-limitations arguments generally appear to be accurate.  However, because Plaintiff is unclear about the timeline of events and as to which alleged facts she uses to assert individual claims, the Court cannot

It is well settled that a federal court sitting in diversity applies the choice-of-law rules of the forum state. *RMS Tech., Inc. v. TDY Indus., Inc.*, F. App'x 853, 857 (4th Cir. 2003). The forum state in this case is Virginia. Accordingly, Virginia law applies.

### 1. Abuse of Process

"To prevail in a cause of action for abuse of process, a plaintiff must plead and prove '(1) the existence of an ulterior purpose; and (2) an act in the use of the process not proper in the regular prosecution of the proceedings.'" *Montgomery v. McDaniel*, 628 S.E.2d 529, 531–32 (Va. 2006). A claim for abuse of process arises when regularly issued process is perverted "to accomplish some ulterior purpose for which the procedure was not intended." *Donohoe Const. Co., Inc. v. Mount Vernon Assocs.*, 369 S.E.2d 857, 862 (Va. 1988). "A legitimate use of process to its authorized conclusion, even when carried out with bad intention, is not a malicious abuse of that process." *Id.* at 863. The heart of an abuse of process claim is the misuse or perversion of process after it has been issued. *Id.* "[I]t is not necessary to allege or prove that the process was maliciously issued." *Mullins v. Sanders*, 54 S.E.2d 116, 121 (Va. 1949). A plaintiff must demonstrate an ulterior motive that led to prosecution and that the "defendant intended or obtained any collateral consequences in bringing charges." *Id.*

Plaintiff alleges that Waldo "retaliated against" her by obtaining a protective order against her and filing a false police report "to have [her] arrested." (Second Am. Compl.

---

soundly conclude that "it clearly appears on the face of the [Second Amended] Complaint" that her claims are time-barred. *Id.* Therefore, the Court will only analyze Defendants' arguments that the Second Amended Complaint fails to state a claim.

at 4.) While Plaintiff may assert that Waldo had bad intentions by initiating these legal processes against Waldo, that allegation is insufficient. *See Mt. Vernon Assocs.*, 369 S.E.2d at 862. Plaintiff fails to necessarily allege any facts to suggest that Waldo perverted process "to accomplish some ulterior purpose for which the procedure was not intended." *Id.* Waldo sought protection from Plaintiff, which is the natural and intended consequence of obtaining a protection order. Likewise, Waldo reported Plaintiff's criminal conduct. Where officers determine probable cause exists, an arrest is the natural consequence of a police report. Plaintiff does not allege facts to support the elements of abuse of process against either Defendant. Therefore, the Court concludes that Plaintiff fails to adequately plead an abuse of process claim. This claim will be dismissed.

### 2. False Arrest

To assert an action for false imprisonment, a plaintiff must allege that their liberty was restricted without any sufficient cause. *See Dill v. Kroger Ltd. P'ship I*, 860 S.E.2d 372, 380 (Va. 2021). A plaintiff cannot prevail on a claim of false arrest if the arrest was pursuant to a regular and valid warrant. *Id.* at 381. Moreover, "[e]ven if the actions of [a defendant] were malicious, and their allegations were not supported by probable cause, [a plaintiff's] arrest [would still be] lawful" if it were "a consequence of proper legal process." *Id.*

In this case, Plaintiff does not allege that she was arrested pursuant to improper process or an invalid warrant. She alleges that Waldo made a "false statement with malice" in order "to have [her] arrested." (Second Am. Compl. at 4.) Even assuming this assertion is true, it is insufficient to establish a claim for arrest. *See Dill*, 860 S.E.2d at

14

380. As for Weigel, Plaintiff does not allege that he engaged in any conduct that could plausibly state a claim that he falsely arrested her, or caused Plaintiff's arrest. At most, Plaintiff alleges that Weigel "conspired" with Waldo to hack into Plaintiff's social media and online accounts. (Second Am. Compl. at 11.) This allegation similarly does not give rise to a claim for false arrest. Therefore, Plaintiff's false arrest claim will be dismissed.

### 3. Fraud, Misrepresentation, and Extortion

"A plaintiff asserting a cause of action for actual fraud bears the burden of proving by clear and convincing evidence the following elements: '(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damages to the party misled.'" *Richmond Metro. Auth. v. McDevvit St. Bovis, Inc.*, 507 S.E.2d 344, 346–67 (Va. 1998) (quoting *Evaluation Rsch. Corp. v. Alequin*, 439 S.E.2d 387, 390 (Va. 1994)).

Fraud must be pled with particularity. Fed. R. Civ. P. 9(b); *Iqbal*, 556 U.S. at 686. "The circumstances required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quoting Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure: Civil § 1297*, at 590 (2d ed. 1990)). Mere allegations of "fraud by hindsight" will not satisfy the requirements. *Id.* (quoting *Hillson Partners Ltd. P'ship v. Adage, Inc.*, 42 F.3d 204, 209 (4th Cir. 1994)).

Plaintiff has failed to assert that any "material fact" was misrepresented by either Defendant. She does not explain how the alleged "misrepresentation" of Waldo's claim

of sexual abuse by a third party is material or relevant. Similarly, she fails to demonstrate how Waldo's change in statements about whether Waldo spoke to Plaintiff over the phone on August 24, 2019, is material or relevant. Moreover, she does not plead that Weigel made any false representations nor does she allege any facts to satisfy any of the elements for fraud against him. Plaintiff fails to adequately plead that she relied upon any false representations or that she suffered any injury as a result of relying upon them. Therefore, Plaintiff's fraud and misrepresentation claim will be dismissed.

Virginia does not recognize a civil cause of action for extortion. *See Johnson v. Freedman, D.D.S.*, No. 110411, 1992 WL 884626 at *1 (Va. Cir. Ct. Apr. 8, 1992) ("While there is no Virginia case on point, the weight of authority appears to be that there is no common law action permitting civil recovery for extortion.").[11] Plaintiff has no private right of action for imposing civil liability for extortion. Accordingly, this claim will be dismissed.

### 4. Slander and Libel

Plaintiff alleges claims of slander and libel against Defendants. (Second Am. Compl. at 2, 6.) "In a written format, defamation is usually termed libel while spoken defamation, not reduced to writing, is slander." *Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005). "Virginia makes no distinction between actions for libel and slander." *Schaecher v. Bouffault*, 772 S.E.2d 589, 594 (Va. 2015). "In Virginia, when a plaintiff

---

[11] Virginia recognizes a civil cause of action for unjust enrichment to recover property or money wrongfully extorted. *See, e.g., Williams v. Consolvo*, 379 S.E.2d 333, 337 (Va. 1989). However, Plaintiff does not allege that Defendants took any money or property from her.

16

alleges defamation by publication, the elements are '(1) publication of (2) an actionable statement with (3) the requisite intent.'" *Id.* (quoting *Tharpe v. Saunders*, 737 S.E.2d 890, 892 (Va. 2013)).

An "actionable" statement is both false and defamatory. *Id.* "Defamatory words are those 'tend[ing] so to harm the reputation of another as to lower him in the estimation of the community or to defer third persons from associating or dealing with him.'" *Id.* (quoting Restatement (Second) of Torts § 559)). A false statement must have the requisite defamatory "sting" to one's reputation. *Id.* (citing *Air Wis. Airlines Corp. v. Hoeper*, 134 S. Ct. 852, 866 (2014)). The Supreme Court of Virginia has described the level of harm to one's reputation required for a defamatory "sting," as language which "tends to injure one's reputation in the common estimation of mankind, to throw contumely, shame, or disgrace upon him, or which tends to hold him up to scorn, ridicule, or contempt, or which is calculated to render him infamous, odious, or ridiculous." *Id.* (quoting *Moss v. Harwood*, 46 S.E. 385, 390 (Va. 1904)).

Plaintiff alleges that Waldo violated Virginia Code § 18.2-417, which imposes criminal penalties for slander and libel. (Second Am. Compl. at 6.) Plaintiff maintains that Waldo's conduct of filing a police report in Richmond and making inconsistent statements during judicial proceedings constitute slander or libel.

As an initial matter, § 18.2-417 is only a vehicle for criminal liability, and this statute does not provide civil relief. Therefore, Plaintiff's allegation that she is entitled to damages for Waldo's violation of this statute fails. Moreover, even under Virginia common law, Plaintiff's allegations are still insufficient. Plaintiff does not allege any

17

facts to support a finding of the requisite intent—her allegations are conclusory. She contends that "[o]n May 14, 2020[,] Waldo filed a police report with Richmond Police and testified [that Plaintiff] threatened her over the telephone for 4 minutes on August 24, 2019 . . . Waldo knowingly made this false [sic] statement with malice and to have [Plaintiff] arrested." (Second Am. Compl. at 4, 6.) Plaintiff does not allege that Waldo had an ulterior motive for making these statements to police that might constitute malice or the intent to defame Plaintiff.

As to Defendant Weigel, Plaintiff does not allege that he published any actionable statement that could plausibly be said to be false or defamatory concerning Plaintiff. Plaintiff alleges that Weigel "contacted [Plaintiff] and stated Waldo was an obsessed fan who stalked both of them." (Second Am. Compl. at 8.) This is not an actionable statement, as it cannot reasonably be interpreted to harm Plaintiff's reputation.

In construing Plaintiff's Second Amended Complaint liberally, Plaintiff fails to plead facts sufficient to allow the court to draw the reasonable inference that either Defendant is liable to her for slander or libel. *See Twombly*, 550 U.S. at 556. Therefore, the Court will dismiss this claim.

### 5. Violation of the Virginia Computer Crimes Act

Plaintiff alleges that Defendants violated the Virginia Computer Crimes Act, Va. Code § 18.2-152.12. (Second Am. Compl. at 2.) This statute creates a civil cause of action for any person whose property or person is injured by reason of another's violation of any of the criminal statutes codified in Title 18.2, Chapter 5, Article 7.1. *See* Va. Code § 18.2-152.12. Section 18.2-152.12(A) provides, in pertinent part:

> Any person whose property or person is injured by reason of a violation of any provision of this article or by any act of computer trespass set forth in subdivisions A 1 through A 8 of § 18.2-152.4 regardless of whether such act is committed with malicious intent may sue therefor and recover for any damages sustained and the costs of suit.

A claim under this statute must comply with Federal Rule of Civil Procedure 9(b)'s heightened pleading standard in that it must be pled with particularity. *See, e.g.,* *Marquette Equip. Fin., LCC v. Rowe Fine Furniture, Inc.*, No. 1:07cv676, 2007 WL 9805734, at *2 (E.D. Va. Sept. 18, 2007).

Plaintiff alleges that Waldo violated § 18.2-152.5:1 and that this violation entitles her to recovery under § 18.2-152.12. Section 18.2-152.5:1 states:

> A. It is unlawful for any person, other than a law-enforcement officer . . . to use a computer to obtain, access, or record, through the use of material artifice, trickery or deception, any identifying information, as defined in clauses (iii) through (xiii) of subsection C of § 18.2-186.3.

The "identifying information" as described in clauses (iii) through (xiii) include:

> (iii) social security number; (iv) driver's license number; (v) bank account numbers; (vi) credit or debit card numbers; (vii) personal identification numbers (PIN); (viii) electronic identification codes; (ix) automated or electronic signatures; (x) biometric data; (xi) fingerprints; (xii) passwords; or (xiii) any other numbers or information that can be used to access a person's financial resources, obtain identification, act as identification, or obtain money, credit, loans, goods, or services.

*Id.* § 18.2-186.3(C).

Plaintiff fails to understand the significance of § 18.2-186.3(C)'s limiting language. She broadly alleges that Defendant violated this statute when Waldo "cyberstalk[ed]" her and both Defendants "conspired" together "to hack into her online accounts." (Second Am. Compl. at 7–8, 11.) Plaintiff does not, however, allege that

either Defendant obtained, accessed, or recorded any of Plaintiff's identifying information as defined by § 18.2-186.3(C). Plaintiff's bare and conclusory allegation is insufficient to meet the pleading requirement. Accordingly, her claim under the Virginia Computer Crimes Act will be dismissed.

### 6. Civil Conspiracy

"A common law conspiracy consists of two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means." *Com. Bus. Sys., Inc. v. Bellsouth Servs., Inc.*, 453 S.E.2d 261, 267 (Va. 1995). A claim for civil conspiracy requires "proof that the underlying tort was committed." *Almy v. Grisham*, 639 S.E.2d 182, 188 (Va. 2007).

In this matter, Plaintiff maintains that Weigel "conspired" with Waldo to hack into her accounts. (Second Am. Compl. at 11.) This bare-bones allegation does not survive a motion to dismiss. As elaborated above, there is no proof that Defendants committed an underlying tort. *See Almy*, 639 S.E.2d at 188. Thus, the Court will dismiss Plaintiff's civil conspiracy claim.

### 7. Civil Perjury

Plaintiff alleges a claim for perjury against Waldo. (Second Am. Compl. at 4–5.) As Waldo points out, in Virginia, perjury is a *criminal* offense. (Waldo's Mot. at 13.) Virginia does not recognize a civil cause of action for perjury. *See Anderson v. Busman*, No. 96413, 1990 WL 10030075, at *2 (Va. Cir. Ct. June 18, 1990) ("[P]laintiff's cause of action for perjury . . . states a criminal matter improperly before this Court in a civil

20

action.")  Therefore, Plaintiff's claim for civil perjury against Waldo fails as a matter of law and must be dismissed.

### III.  CONCLUSION

For these reasons, the Court will deny Waldo's Motion to Quash (ECF No. 20), deny Plaintiff's Motions Seeking Leave of Court to File Surreplies (ECF Nos. 28, 36), deny Plaintiff's Motion to Strike (ECF No. 38), and grant Defendants' Motions to Dismiss (ECF Nos. 18, 30) as to all counts.  The Court finds that any amendment would be futile based on the facts and circumstances of this case and will dismiss Plaintiff's Second Amended Complaint with prejudice.  *See Elrod v. Busch Ent. Corp.*, 479 F. App'x 550, 551 (4th Cir. 2012) (allowing trial courts to deny leave to amend a complaint if the complaint, as amended, would not withstand a motion to dismiss); *see also Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011).

An appropriate Order will accompany this Memorandum Opinion.

/s/

Henry E. Hudson
Senior United States District Judge

Date: April 17, 2023
Richmond, Virginia